SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. A.L.A.** **(A-3-21) (085500)**

**Argued February 28, 2022 -- Decided August 18, 2022**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this case, the Court considers whether a jury could have understood that the affirmative defense of reasonable corporal punishment applied to both a child endangerment charge and a simple assault charge where the reasonable corporal punishment instruction was provided only in the instructions for the child endangerment offense.

Defendant A.L.A. was the legal guardian of her four grandchildren, who ranged in age from three to seventeen years old. In August 2016, the oldest grandchild reported that defendant physically abused them. After an investigation, the Division of Child Protection & Permanency initiated an emergency removal of all four grandchildren. Defendant was tried for multiple counts of endangering the welfare of a child. The parties agreed that the court would instruct the jury on second-degree endangering, and what the parties termed a lesser included disorderly persons offense of simple assault.

When the court asked counsel for comments on the proposed jury instructions, defense counsel told the judge, "if you were to read that without a caveat, every spanking is a simple assault." Defense counsel argued "that corporal punishment is recognized by the law as a valid means of disciplining a child. So, there are certain parts of corporal punishment that would not -- would not be a simple assault because otherwise it's just going to be an automatic simple assault on all three charges."

The parties agreed that where there is a child endangering charge under N.J.S.A. 2C:24-4(a), the following charge (referred to here as "the K.A. language") should be used: "The law does not prohibit the use of corporal punishment. The statute prohibits the infliction of excessive corporal punishment. The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of the case." (quoting DYFS v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010)). The trial judge adopted the K.A. language in instructing the jury on the child endangerment count but not the simple assault charge.

1

After the trial judge instructed the jury, defense counsel, as previously requested, sought an instruction for the simple assault charge noting the reasonable corporal punishment exception. The court declined to change the charge, and the jury acquitted defendant of all child endangerment charges but convicted her of one count of simple assault with respect to only one of the children. A majority of the Appellate Division affirmed. Defendant appealed to the Court as of right based on the dissent in the Appellate Division.

**HELD:** The jury could not have understood that the reasonable corporal punishment language in the child endangerment charge also applied to the simple assault charge. The trial court erred in failing to instruct the jury, in the context of the simple assault charge, that reasonable corporal punishment is not prohibited. Because that error in jury instructions could have led the jury to an unjust result, the Court vacates defendant's conviction and remands for further proceedings.

1. The Court reviews the relevant portion of the child endangerment statute, N.J.S.A. 2C:24-4(a)(2), and the three subsections of Title Nine referenced in that statute, including N.J.S.A. 9:6-8.21(c)(4)'s provision that a child may be abused or neglected through "the infliction of excessive corporal punishment." Although Title Nine does not define "excessive corporal punishment," New Jersey courts have endorsed the K.A. language distinguishing "moderate correction such as is reasonable under the circumstances" from "excessive corporal punishment" for jury instructions for child endangerment. The simple assault statute, N.J.S.A. 2C:12-1(a)(1), does not mention corporal punishment. But the New Jersey Code of Criminal Justice separately recognizes justification as an affirmative defense in certain criminal cases. N.J.S.A. 2C:3-8 provides in part that force used upon "another is justifiable . . . where the actor has been vested or entrusted with special responsibility for the care, supervision, discipline or safety of another or of others and the force is used for the purpose of and . . . to the extent necessary to further that responsibility." The provision of the Model Penal Code on which N.J.S.A. 2C:3-8 was based specifically refers to the use of force by parents or guardians to promote the welfare of a minor. (pp. 17-22)

2. If a defendant requests a charge on an affirmative defense and there is a rational basis in the record to give it, then the court should give the requested instruction. Here, defense counsel twice asked for an explicit statement that reasonable corporal punishment is not prohibited by law. In response to counsel's first request, the State noted that providing the K.A. charge "would seem to address concerns that -- that the defense has about the jury automatically reaching the conclusion that every time you employ corporal punishment with a child it would be viewed as simple assault." Both parties thus agreed to the trial court providing the K.A. reasonable corporal punishment instructions, but the trial court provided that instruction only during the child endangerment charge. Defense counsel's second request for the K.A. charge

2

occurred after the trial judge completed his instructions but made no mention of reasonable corporal punishment during the simple assault charge. Although defense counsel did not specifically mention N.J.S.A. 2C:3-8 in either request, counsel was clearly requesting an affirmative defense instruction, separate and apart from the child endangerment charge, that reasonable corporal punishment is not a crime and does not constitute simple assault, as the parties had agreed in using the K.A. language. Neither the State nor the trial court disputed the applicability of the reasonable corporal punishment instruction to the simple assault. A rational basis existed to give the requested instruction, and it was error not to do so. (pp. 22-25)

3. Here, the jury acquitted defendant of the very same conduct under the child endangerment statute that it found defendant guilty of under the simple assault statute. The difference is that defendant had the benefit of the K.A. reasonable corporal punishment instruction for the child endangerment charge but not for simple assault. Had the same instruction been explicitly given to the jury for the simple assault charge, there is a real possibility that the jury could have reached a different result on that charge. If the jury is not instructed as to the law regarding reasonable corporal punishment in relation to a simple assault charge, then the jury could never reach a verdict other than guilty so long as there is sufficient evidence that the child experienced the sensation of physical pain. The argument that the jurors would automatically carry instructions received as to one charge -- child endangerment -- through to their consideration of a separate charge on a separate offense with distinct elements -- simple assault -- is at odds with the fundamental presumption that the jury follows the trial court's instructions. (pp. 25-27)

4. The Court does not endorse the notion that simple assault is a lesser included offense to child endangerment and does not anticipate that simple assault will often be charged in cases such as the present matter. But, going forward, if simple assault is charged along with child endangerment in the context of a parent or guardian inflicting corporal punishment, the trial court must instruct the jury as to the law regarding each offense. Specifically, the trial court must instruct the jury that the law does not prohibit the use of corporal punishment and a parent may inflict moderate correction as is reasonable under the circumstances of the case not only as to the endangerment charges but also as to the simple assault charges. The jury must also be instructed that excessive corporal punishment, however, is prohibited as to both charges. (pp. 8, 27-28)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON and SOLOMON; and JUDGE FUENTES (temporarily assigned) join in JUSTICE PIERRE-LOUIS's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-3 September Term 2021
085500

State of New Jersey,

Plaintiff-Respondent,

v.

A.L.A.,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| February 28, 2022 | August 18, 2022 |

Alison Gifford, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; Alison Gifford, of counsel and on the
brief).

Monica do Outeiro, Special Deputy Attorney General/
Acting Assistant Prosecutor, argued the cause for
respondent (Lori D. Linskey, Acting Monmouth County
Prosecutor, attorney; Monica do Outeiro, of counsel and
on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this case, we consider whether a jury could have understood that the

affirmative defense of reasonable corporal punishment applied to both a child

endangerment charge and a simple assault charge where the reasonable corporal punishment instruction was provided only in the instructions for the child endangerment offense.

Defendant A.L.A. was the legal guardian of her four grandchildren, who ranged in age from three to seventeen years old. At one point, the oldest grandchild, K.A., reported to authorities that defendant physically abused her and the other children. The Division of Child Protection and Permanency (DCPP) opened an investigation and ultimately concluded, based on an audio recording of defendant allegedly hitting three-year-old A.A. with a belt multiple times and defendant's seeming admission to the abuse, that the children should be removed from defendant's home.

Following a trial on several counts of child endangerment, the jury acquitted defendant of all endangering charges but convicted her of simple assault, presented as a lesser included offense to endangering, with respect to A.A.

Defendant appealed, arguing that the jury should have been instructed that reasonable corporal punishment is not a crime as to both the simple assault charge and the child endangerment offense, whereas defendant's jury only received that instruction on the latter offense. The Appellate Division affirmed defendant's conviction in a split decision. The majority found that

2

the trial court's jury instructions properly included the language from <u>DYFS v.</u> <u>K.A.</u>, 413 N.J. Super. 504, 510 (App. Div. 2010),[1] which instructs that the law does not prohibit reasonable corporal punishment by a parent or guardian, for the child endangerment charge. The court determined that the plain language of the simple assault statute, however, does not include an exception for reasonable corporal punishment. The dissenting judge opined that the trial court was required to include the reasonable corporal punishment exception in its instructions on the simple assault charge and that its omission was clearly capable of producing an unjust result.

We find that the jury could not have understood that the <u>K.A.</u> language in the child endangerment charge also applied to the simple assault charge. We agree with the dissent that omitting the instruction during the simple assault charge was clearly capable of producing an unjust result; indeed, in finding defendant guilty of simple assault, the jury convicted defendant of the same conduct it acquitted her of in the child endangerment charge, as to which it had been instructed on reasonable corporal punishment. We therefore hold that the trial court erred in failing to instruct the jury, in the context of the simple assault charge in this case, that reasonable corporal punishment is not prohibited. We find that the error in jury instructions could have led the jury

---

[1] This case has no relation to the grandchild K.A. in this matter.

to an unjust result, so we reverse the Appellate Division's judgment, vacate defendant's conviction, and remand for further proceedings.

I.

A.

We rely on the facts adduced at trial for the following summary.

Defendant A.L.A. assumed the legal guardianship and sole caregiving of her four grandchildren -- teenagers K.A. and K.L.A., and toddlers C.A. and A.A.[2] At the time of the alleged abuse, K.A. was seventeen, K.L.A. was fifteen, C.A. was four, and A.A. was three years old. Defendant's daughter could not care for her children K.A. and K.L.A. due to a debilitating drug addiction, and defendant's son -- the father of A.A. and C.A. -- was deceased.

Defendant assumed responsibility for the children, and they all lived in her home in Keansburg. Defendant set strict house rules and required K.A. and K.L.A. to help with chores and take care of the younger children. According to defendant, she disciplined the teenage girls, but only when they failed to do "their chores properly," "ha[d] an attitude," or "fail[ed] to abide by rules such as going to bed on time." There was no evidence presented that the toddlers had any household responsibilities or chores.

---

[2] Initials are used to protect the identities of the parties and witnesses in this matter. See R. 1:38-3(c)(9).

4

On August 5, 2016, K.A. ran away from home and went to live with a friend in Keyport. On August 7, 2016, defendant reported K.A. missing to the Keansburg Police. The police eventually located K.A., who reported to police that she ran away to escape defendant's physical abuse.

A few days later, DCPP opened an investigation into defendant's conduct in response to K.A.'s report. A DCPP caseworker, Jacqueline Alvarez, visited defendant's home and conducted interviews with the four grandchildren. K.A. insisted that defendant abused her and the other three grandchildren. Alvarez, however, did not observe any physical injuries on the children, and the three younger grandchildren denied the abuse. During K.L.A.'s interview, she told Alvarez that K.A. had run away because of defendant's strict house rules. Alvarez concluded that the children were not in imminent danger of being harmed; thus, DCPP did not initiate the grandchildren's removal from defendant's home at that point.

About a month later, on September 7, 2016, Alvarez returned to defendant's home to follow up on the investigation. During that visit, K.A. played for Alvarez an audio recording from late August 2016 of defendant allegedly hitting A.A. with a leather belt multiple times. According to the trial transcript, the following could be heard on the recording: "[c]rying, indiscernible, crying, ow smack, ow smack, ow smack, ow smack, ow smack,

5

ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, indiscernible."[3] Alvarez spoke to A.A., who confirmed that she was the child on the recording who was being hit. According to K.A., prior to the recording, defendant had instructed A.A. to lie on the bed, but instead A.A. disobeyed defendant and got off the bed to play with some toys on the floor. Then, according to K.A., defendant hit A.A. with the belt. K.A. summed up the alleged beating as "one of the days when [defendant] felt like beating them." After hearing the recording, Alvarez spoke to the other grandchildren who disclosed additional abusive acts by defendant.

Alvarez played the recording for defendant and, at first, defendant responded by stating, "[w]ell, I guess you got me," and "if you have it, you have it . . . [A.A.] must have been really bad that day." Defendant later denied committing the alleged abusive acts captured on the recording claiming DCPP could not prove it was her on the recording and stated, "when I beat them I yell so that wasn't me."

---

[3] Because the recording contains only audio, it is unclear exactly how many times defendant allegedly hit A.A. The State argues that based on the audio, defendant hit A.A. 12 times. Defense counsel argues that some of the sounds on the audio could be the belt hitting a chair, and not actually A.A. The trial court did not make a finding as to how many times defendant allegedly hit A.A.

Alvarez contacted her supervisors at DCPP and sent the recording to them, and DCPP initiated an emergency removal of all four grandchildren. The children were removed and taken to the hospital pursuant to DCPP's required post-removal procedures.  Medical examinations of the children did not reveal any injuries.

B.

On January 27, 2017, a Monmouth County grand jury charged defendant in a ten-count indictment with the following:  second-degree endangering the welfare of a child (counts one to four); third-degree aggravated assault (counts five, six, and eight); third-degree possession of a weapon for an unlawful purpose (counts seven and nine); and fourth-degree unlawful possession of a weapon (count ten).  The charges stemmed from defendant's alleged abuse of her four grandchildren spanning from September 1, 2015 to August 25, 2016. Prior to trial, the court granted the State's motion to dismiss counts five through ten.

The jury trial began on the remaining four counts related to defendant's alleged violation of N.J.S.A. 2C:24-4(a)(2), endangering the welfare a child, pertaining to each of her four grandchildren:  K.A. (count one), K.L.A. (count two), C.A. (count three), and A.A. (count four).  At the close of the State's case, the court granted defendant's motion for a judgment of acquittal on count

7

two, endangering the welfare of K.L.A.  After the acquittal on count two, the parties agreed that the court would instruct the jury on second-degree endangering, and what the parties termed a lesser included disorderly persons offense of simple assault.[4]

During the charge conference, the court reviewed the jury instructions and asked counsel for comment.  The following exchange occurred between defense counsel and the judge:

> DEFENSE COUNSEL:  -- regarding the lesser included, simple assault . . . if you were to read that without a caveat, every spanking is a simple assault. The caveat should be that corporal punishment is recognized by the law as a valid means of disciplining a child.  So, there are certain parts of corporal punishment that would not -- would not be a simple assault because otherwise it's just going to be an automatic simple assault on all three charges.
>
> THE COURT:  Well, you requested simple assault yesterday.
>
> DEFENSE COUNSEL:  Well, we talked about lesser included, but I'm -- I'm requesting it now but with the caveat that not every corporal punishment, spanking is a simple assault that the law recognizes.

The State then commented that the parties "had discussed in chambers including within the endangering charge a definition of simple assault taking

---

[4]  Although simple assault was referred to as a lesser included offense to child endangerment, this Court does not endorse that notion.  Defense counsel consented to the inclusion of this charge, so the issue is not before the Court.

8

the language from [<u>K.A.</u>]"  The parties agreed that where there is a child

endangering charge under N.J.S.A. 2C:24-4(a), the following charge, which

the trial judge read into the record, should be used:

> The law does not prohibit the use of corporal punishment.  The statute prohibits the infliction of excessive corporal punishment.  The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of the case.
>
> [(quoting <u>K.A.</u>, 413 N.J. Super. at 510).]

The State then explained that such an instruction "would seem to address

concerns that -- that the defense has about the jury automatically reaching the

conclusion that every time you employ corporal punishment with a child it

would be viewed as simple assault."  The court asked defense counsel if there

was any objection to giving an instruction that tracked the language in <u>K.A.</u>,

and defense counsel had no objection.

In delivering the jury charge, the trial judge instructed the jury on the

child endangerment count as follows:

> So now what I'm going to talk to you about is the substantive law and what I will tell you, and I'm going to start with [c]ount [one] in this indictment, and then I will also instruct you on the lesser included offense as I just talked about, the lesser included offense of endangering the welfare of a child, abuse or neglect, is the simple assault that has been mentioned.
>
> . . . .

9

To find [defendant] guilty of this crime, the State must prove beyond a reasonable doubt the following about -- the following elements: That [K.A.] was a child, one; two, the defendant knowingly caused the child harm that would make the child abused or neglected; three, that the defendant knew that such conduct would cause the child harm that would make the child abused or neglected and four, the defendant had a legal duty for the care of the child or had assumed responsibility for care of the child.

. . . .

The second element that the State must prove beyond a reasonable doubt is that defendant knowingly caused the child harm that would make the child abused or neglected. An abused or neglected child means a child whose physical condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of the defendant to exercise a minimum degree of care in providing a child with proper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm or substantial risk thereof including the infliction of excessive corporal punishment or by any other acts of similar serious nature requiring the aid of the Court.

The law does not prohibit the use of corporal punishment. The statute provides -- the statute -- let me read that again. The law does not prohibit the use of corporal punishment. The statute prohibits the infliction of excessive corporal punishment. The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of a case.

The judge then addressed the simple assault charge, commenting that

simple assault should not be considered "unless you find the State has failed to

10

meet its burden with regard to the [endangerment] offenses in the indictment."

Specifically, the judge stated:

> Simple assault is a lesser included offense to [c]ount [one] of this indictment involving [K.A.]. The statute which defines simple assault provides that a person commits a simple assault if she purposefully, knowingly, recklessly causes bodily injury to another. In order for you to convict the defendant, [A.L.A.], of this offense the State must prove the following elements beyond a reasonable doubt: (1) That the defendant did cause bodily injury to [K.A.] and (2) the defendant acted purposely or knowingly or recklessly in causing bodily injury to [K.A.]
>
> The first -- the first element the State must prove beyond a reasonable doubt is the defendant caused bodily injury to another. Body injury -- bodily injury is defined as physical pain, illness or any impairment of the physical condition. The second element that the State must prove beyond a reasonable doubt is the defendant acted purposely or knowingly or recklessly in causing bodily injury to [K.A.]

After the trial judge instructed the jury, defense counsel, as previously requested, sought an instruction for the simple assault charge noting the reasonable corporal punishment exception. The following exchange occurred:

> DEFENSE COUNSEL: The only thing I would -- I would add, Judge, is that under the lesser included, simple assault . . . spanking is not a simple assault if it arises during reasonable corporal punishment of a child.
>
> PROSECUTOR: It's reasonably entrenched in the other part of that instruction.

11

DEFENSE COUNSEL:  Yeah, but that's the problem, it's in the other part, it's not under the lesser included part.

THE COURT:  I'm not -- I'm not going to change the charge now.

DEFENSE COUNSEL:  Okay.

THE COURT:  Then we should have done that before. We'll just leave it as it is.  Okay.

The jury subsequently returned a verdict acquitting defendant of all child endangerment charges but convicting her of one count of simple assault with respect to A.A. only.  On June 29, 2018, the court sentenced defendant to fines and penalties totaling $575.

## C.

In an unpublished split decision, the Appellate Division affirmed defendant's conviction.

The majority found that the parties agreed during the charge conference to include only the K.A. language and not any other affirmative defense pertaining to reasonable corporal punishment.  The majority noted that the K.A. language had been used in cases involving Title Nine or in which Title Nine terms were incorporated into the criminal charges, but that no court has extended the Title Nine terms and definitions to simple assault.  According to the majority, there was no evidence that the Legislature intended to "graft any

12

Title Nine provision to the simple assault statute," and tailoring the simple assault charge to include language derived from Title Nine would improperly "include an exception that the Legislature chose to exclude." Finally, the majority stressed that the evidence "showed that defendant hit a child twelve times with a belt while the child cried in apparent pain throughout the ordeal." Therefore, the majority concluded that such "evidence supports a conviction of simple assault" and "discern[ed] no error in the instructions warranting a reversal of the jury's verdict."

In departing from the majority opinion, the dissent determined that (1) the jury could not have understood that the instruction from the child endangerment charge about "reasonable corporal punishment" also applied to simple assault; (2) the trial judge was required to include a "reasonable corporal punishment" exception in the simple assault charge; and (3) omission of the charge was capable of producing an unjust result.

The dissenting judge agreed with the majority that "the simple assault statute does not incorporate qualifying language as does the child endangerment statute," but rejected the majority's strict adherence to the language of the statute. The dissent noted that "[courts] expect too much to look for such precision" and "the Legislature could not foresee every conceivable attempt by a prosecutor to criminalize what should not be

13

criminalized, and undoubtedly left it for trial judges to sort out such matters with common sense and according to the particular circumstances presented." In a footnote, the dissent mentioned that the Legislature may have considered the "particular circumstances presented" by providing a justification defense in N.J.S.A. 2C:3-8; this footnote was the first time the justification defense was expressly raised by statutory citation in this matter.

Relying on the tenet that a court must assume the jury followed the judge's instructions, the dissent concluded that the jury could not have considered whether defendant was disciplining A.A. in a "non-excessive way" for the simple assault charge "because it was not told that this circumstance mattered or could be considered." Therefore, according to the dissenting judge, the absence of the instruction likely produced an unjust result because the jury acquitted defendant for child endangerment, "suggest[ing] it found defendant was disciplining the child, but not excessively" while convicting her for simple assault based on the same conduct.

II.

A.

Defendant appealed as of right based on the dissent in the Appellate Division. See R. 2:2-1(a)(2). In her supplemental brief to this Court, defendant argues for the first time that the trial court erred in failing to instruct the jury on the affirmative defense of justification in N.J.S.A. 2C:3-8 for the simple assault charge because there was a rational basis in the evidence to support the instruction. Defendant points out that defense counsel asked the court to instruct the jury on reasonable corporal punishment, the substantive equivalent of N.J.S.A. 2C:3-8, and that there was support in the record for such an instruction. Defendant further highlights that New Jersey allows the reasonable use of corporal punishment under both the child endangerment and abuse statute, N.J.S.A. 2C:24-4(a), and N.J.S.A. 2C:3-8's "special relationship defense" statute. Additionally, defendant contends that the reasonable corporal punishment defense was "reasonably entrenched" in the child endangerment charge, such that the jury would not have applied it to the simple assault charge as well, because the charges were presented as being distinct.

15

B.

The State argues that the Appellate Division majority appropriately concluded that the trial court was not required to instruct the jury on the N.J.S.A. 2C:3-8 defense. The State contests defendant's claim that defense counsel sought a N.J.S.A. 2C:3-8 instruction either during the charge conference or after the jury was charged. Rather, the State asserts that defendant requested only language from Title Nine, particularly from K.A., excepting reasonable corporal punishment from abuse, to be applied to the simple assault charge. Consequently, the State argues, because defendant did not request the affirmative defense of justification under N.J.S.A. 2C:3-8, she is subject to the "clearly indicated" standard. In addressing the dissenting opinion, the State argues that trial courts are not required to craft jury instructions creating defenses to assault not recognized by the Legislature.

III.

Appropriate and proper jury instructions are essential for a fair trial. Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 256 (2015). An appeal centered around jury instructions requires courts to read the charge as a whole, and not just the challenged portion, to determine its overall effect. State v. Garrison, 228 N.J. 182, 201 (2017). "[A] proper 'jury charge must correctly state the applicable law, outline the jury's function and be clear in how the

16

jury should apply the legal principles charged to the facts of the case at hand.'"

Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015) (quoting Viscik v.

Fowler Equip. Co., 173 N.J. 1, 18 (2002)).

The jury instruction issues in this case revolve around the child

endangerment and simple assault charges.

A.

The New Jersey child endangerment statute provides, in relevant part,

that

> [a]ny person having a legal duty for the care of a child
> or who has assumed responsibility for the care of a
> child who causes the child harm that would make the
> child an abused or neglected child as defined in
> [N.J.S.A.] 9:6-1, [N.J.S.A.] 9:6-3, and [N.J.S.A.] 9:6-
> 8.21 is guilty of a crime of the second degree.
>
> [N.J.S.A. 2C:24-4(a)(2).]

"The three subsections of Title [Nine] incorporated by the Legislature in

N.J.S.A. 2C:24-4[(a)]" are indispensable in N.J.S.A. 2C:24-4(a)'s application

and enforcement.  State v. Fuqua, 234 N.J. 583, 591 (2018).

In Title Nine, N.J.S.A. 9:6-1 first outlines "eight actions that constitute

child abuse," including child endangerment.  Ibid.  Regarding the act of child

endangerment, N.J.S.A. 9:6-3 states that

> [a]ny parent, guardian or person having the care,
> custody or control of any child, who shall abuse,

17

abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree.

N.J.S.A. 9:6-8.21(c)(4), in relevant part, defines an "[a]bused or neglected child" as

a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care

. . . .

(b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of <u>excessive corporal punishment</u>; or by any other acts of a similarly serious nature requiring the aid of the court . . . .

[(emphasis added).]

Although Title Nine does not define "excessive corporal punishment," New Jersey courts have endorsed the language used in <u>K.A.</u> for jury instructions for child endangerment.

In <u>K.A.</u>, a mother struck her eight-year-old daughter's shoulder several times, which resulted in four noticeable bruises. 413 N.J. Super. at 506. In resolving the question of whether the beating constituted "excessive corporal

18

punishment" under N.J.S.A. 9:6-8.21, which is undefined in the statute, the court examined existing case law and the relevant administrative code to construe its charge. Id. at 510-11.

In its jury instructions in K.A., the court adopted the language in State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002): "The law does not prohibit the use of corporal punishment. The statute prohibits the infliction of excessive corporal punishment. The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of a case." Id. at 510 (quoting T.C., 347 N.J. Super. at 239-40).

B.

The simple assault statute directs that

> [A] person is guilty of [simple] assault if the person:
>
> > (1) Attempts to cause or purposely, knowingly, or recklessly causes bodily injury to another; or
> >
> > (2) Negligently causes bodily injury to another with a deadly weapon; or
> >
> > (3) Attempts by physical menace to put another in fear of imminent serious bodily injury.
>
> [N.J.S.A. 2C:12-1(a).]

The model jury instructions for simple assault as a lesser included offense, as provided to the jury in this matter, note that the State must prove beyond a

19

reasonable doubt that the defendant caused bodily injury to another and further defines "bodily injury" "as physical pain, illness or any impairment of the physical condition." See Model Jury Charges (Criminal), "Simple Assault (Bodily Injury) (Lesser Included Offense) (N.J.S.A. 2C:12-1(a)(1))" (rev. May 8, 2006).

## C.

The New Jersey Code of Criminal Justice recognizes justification as an affirmative defense in certain criminal cases. State v. Galicia, 210 N.J. 364, 389 (2012). At issue in this case is one of the justification provisions found in N.J.S.A. 2C:3-8, which provides that

> [t]he use of force upon or toward the person of another is justifiable as permitted by law or as would be a defense in a civil action based thereon where the actor has been vested or entrusted with special responsibility for the care, supervision, discipline or safety of another or of others and the force is used for the purpose of and, subject to section 2C:3-9(b), to the extent necessary to further that responsibility, unless:
>
> a. The code or the law defining the offense deals with the specific situation involved; or
>
> b. A legislative purpose to exclude the justification claimed otherwise plainly appears; or
>
> c. Deadly force is used, in which case such force must be otherwise justifiable under the provisions of this chapter.

20

[N.J.S.A. 2C:3-8.]

The 1971 Commentary to N.J.S.A. 2C:3-8 states that the statute was "based upon [M.P.C.] § 3.08 but is intended to generalize the rules there set forth . . . and believes that the Courts look to that provision, as well as to existing law, in interpreting this Section." The New Jersey Penal Code:  Final Report § 2C:3-8, at 94 (Crim. L. Revision Comm'n 1971) (citing Richardson v. Parole Bd., 98 N.J.L. 690 (E. & A. 1923) (codifying the parental right to inflict moderate and reasonable correction to children/wards)).  M.P.C. § 3.08, in turn, provides that

> [t]he use of force upon or toward the person of another is justifiable if:
>
> > (1)  the actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:
> >
> > > (a)  the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and
> > >
> > > (b)  the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation; . . .

21

IV.

A.

When a party requests a specific instruction that is not given, reviewing courts consider whether a rational basis for giving the instruction existed. State v. Carrero, 229 N.J. 118, 128 (2017). That standard applies to requested charges on affirmative defenses. See State v. Walker, 203 N.J. 73, 87 (2010) ("[I]f a defendant requests a charge on the defense and there is a rational basis in the record to give it, then the court should give the requested instruction."). "The rational-basis test sets a low threshold," Carrero, 229 N.J. at 128, and in deciding whether the rational-basis test has been satisfied, the trial court must view the evidence in the light most favorable to the defendant, see State v. Mauricio, 117 N.J. 402, 412, 418 (1990).

Here, defendant highlights that defense counsel twice asked the court to instruct the jury on the affirmative defense of reasonable corporal punishment and that there was support in the record for such an instruction. The State, on the other hand, argues that defense counsel never sought an affirmative defense instruction under N.J.S.A. 2C:3-8.

While it is true that defense counsel did not expressly cite to N.J.S.A. 2C:3-8 in requesting the reasonable corporal punishment charge, the record is clear regarding what defense counsel twice asked for -- an explicit statement

that reasonable corporal punishment is not prohibited by law. Defense counsel

first requested the charge during the charge conference:

> DEFENSE COUNSEL: -- if you were to read that without a caveat, every spanking is a simple assault. The caveat should be that corporal punishment is recognized by the law as a valid means of disciplining a child. So, there are certain parts of corporal punishment that would not -- would not be a simple assault because otherwise it's just going to be an automatic simple assault on all three charges.
>
> THE COURT: Well, you requested simple assault yesterday.
>
> DEFENSE COUNSEL: Well, we talked about lesser included, but I'm -- I'm requesting it now but with the caveat that not every corporal punishment, spanking is a simple assault that the law recognizes.

In response to this first request, the State noted that providing the K.A. charge

"would seem to address concerns that -- that the defense has about the jury

automatically reaching the conclusion that every time you employ corporal

punishment with a child it would be viewed as simple assault." In that

statement, the State quite succinctly summarized defense counsel's concerns in

agreeing to provide the K.A. language in order to address the corporal

punishment/simple assault issue. Both parties agreed to the trial court

providing the K.A. reasonable corporal punishment instructions, but the trial

court provided that instruction only during the child endangerment charge.

23

Defense counsel's second request for the <u>K.A.</u> charge occurred after the trial judge completed his instructions but made no mention of reasonable corporal punishment during the simple assault charge. Defense counsel sought an additional instruction applicable to the simple assault charge that "spanking is not a simple assault if it arises during reasonable corporal punishment of a child." The State responded that "[i]t's reasonably entrenched in the other part of that instruction." Defense counsel maintained that while reasonable corporal punishment was entrenched in the child endangerment instruction, it was not part of the simple assault charge.

Although defense counsel did not specifically mention N.J.S.A. 2C:3-8 in either request, defense counsel was clearly requesting an affirmative defense instruction, separate and apart from the child endangerment charge, that reasonable corporal punishment is not a crime and does not constitute simple assault, as the parties had agreed in using the <u>K.A.</u> language. The trial court, as well as the State, was aware of and understood defense counsel's requested jury instruction. By virtue of defense counsel's repeated request for the reasonable corporal punishment charge, the rational basis standard applies.

Neither the State nor the trial court disputed the applicability of the reasonable corporal punishment instruction to the simple assault charge as evidenced by the extensive discussion regarding the applicability of reasonable

24

corporal punishment in this case. Therefore, we conclude that a rational basis existed for the trial court to give the requested instruction and that it was error not to do so. We now consider whether the error requires reversal.

B.

In this case, whether the error in omitting the requested jury instruction was harmless, see State v. Baum, 224 N.J. 147, 159 (2016), turns on whether the jury would have understood from the entirety of the jury charge that "reasonable corporal punishment" was an exception to criminal liability under both the child endangerment and simple assault charges. We find there is a real possibility that the erroneous instruction "led to an unjust result" -- that is, there is a possibility "sufficient to raise a reasonable doubt as to whether [the instruction] led the jury to a verdict it otherwise might not have reached." Ibid. (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

Although we cannot speculate as to the jury's determinations during deliberations, the jury verdict was inconsistent. The jury acquitted defendant of the very same conduct under the child endangerment statute that it found defendant guilty of under the simple assault statute. The difference is that defendant had the benefit of the K.A. reasonable corporal punishment instruction for the child endangerment charge but not for simple assault. Had the same instruction been explicitly given to the jury for the simple assault

25

charge, there is a real possibility that the jury could have reached a different result on that charge.

As defense counsel explained in requesting the reasonable corporal punishment charge, if a parent or guardian is charged with simple assault and the jury is not instructed that reasonable corporal punishment is not prohibited, a guilty verdict will almost always result because bodily injury under simple assault can be found if the victim suffered the sensation of physical pain. If the jury is not instructed as to the law regarding reasonable corporal punishment in relation to a simple assault charge, then the jury could never reach a verdict other than guilty so long as there is sufficient evidence that the child experienced the sensation of physical pain.

At oral argument, the State conceded that the charge of simple assault in conjunction with a child endangerment offense is uncommon. In this case, because those charges were packaged together and based on the same alleged conduct, a common sense understanding of the law regarding corporal punishment by a parent or guardian should have resulted in an instruction to the jury, embedded within the simple assault charge, that explained that reasonable corporal punishment is not a crime. Again, the trial transcript is clear that the trial court and the State agreed that the charge was applicable,

but they disagreed with defense counsel on the need to reiterate the charge after it had already been articulated during the child endangerment instruction.

Under the view taken by the court and the State, the jurors would automatically carry instructions received as to one charge -- not as part of an overarching section that would apply to multiple charges or throughout an entire trial, but an instruction within and limited to a specific charged offense -- through to their consideration of a separate charge on a separate offense with distinct elements. That view is completely at odds with "[o]ne of the foundations of our jury system [--] that the jury is presumed to follow the trial court's instructions." State v. Burns, 192 N.J. 312, 335 (2007); see also State v. Afanador, 151 N.J. 41, 54 (1997) ("Erroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." (quoting State v. Brown, 138 N.J. 481, 522 (1994)); State v. Hodde, 181 N.J. 375, 384 (2004) (underscoring the vital importance of accurate jury instructions in a criminal trial).

Once again, in this matter, the parties consented to simple assault as a lesser included offense of child endangerment. Going forward, if simple assault is charged along with child endangerment in the context of a parent or guardian inflicting corporal punishment, the trial court must instruct the jury as to the law regarding each offense. Specifically, the trial court must instruct the

27

jury that the law does not prohibit the use of corporal punishment and a parent may inflict moderate correction as is reasonable under the circumstances of the case not only as to the endangerment charges but also as to the simple assault charges. The jury must also be instructed that <u>excessive</u> corporal punishment, however, is prohibited as to both charges. We do not anticipate that simple assault will often be charged in cases such as the present matter, but if it is, the above-noted instructions must be provided.

V.

For the reasons outlined above, we reverse the judgment of the Appellate Division, vacate defendant's conviction, and remand the matter consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON and SOLOMON; and JUDGE FUENTES (temporarily assigned) join in JUSTICE PIERRE-LOUIS's opinion.

28